### Cincinnati, Newport & Covington Railway Company v. Trenkamp.

(Decided June 14, 1927.)

Appeal from Kenton Circuit Court.

1. Carriers.—In action against street railway company for injuries sustained by passenger, who fell on concrete landing within a few steps after leaving car, evidence that platform was negligently permitted to become wet and slippery held insufficient to go to jury.

2.  Carriers.—The law imposes on railway company duty to keep its
    terminal station and places therein, where its patrons are invited
    and have a right to be, reasonably safe for their use.

3.  Carriers.—Plaintiff, in action against railway company for injuries
    from fall on concrete platform after leaving car, has burden of
    proof of alleged negligence in failing to keep place reasonably
    safe.

GALVIN & TRACY for appellant.

ORIE S. WARE for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

June 21, 1924, appellee, Frank Trenkamp, boarded a street car in Covington, Ky., owned and operated by appellant, Cincinnati, Newport & Covington Railway Company, bound for Cincinnati, and paid his fare. He was carried over the bridge across the Ohio river between the two cities and into the Dixie terminal in Cincinnati, owned and maintained by appellant in connection with its street car service. He left the car in the terminal, and had proceeded afoot some eight or ten feet when he fell, breaking one of his legs in three places. From this he necessarily suffered great pain, was temporarily disabled for work for a considerable period of time, and incurred much expense in hospital bills and surgeon's fees. He instituted this action to recover from appellant for the injuries and consequent damages, upon the theory that they were the proximate result of its negligence. The trial below resulted in a judgment for appellee for $5,000.00, and appellant has appealed.

The chief ground urged for reversal by appellant is that the record affords no evidence of its negligence, and consequently that it was entitled to a directed verdict.

Appellant's street cars, carrying passengers from Covington to Cincinnati, after crossing the bridge, all enter the terminal where appellee was injured. The cars from Covington enter the terminal on level with its second floor, and passengers alight from them on to an unloading platform raised slightly above the track level, so that from the car step to the platform there is a step down of only about six inches. This platform is of concrete construction, float-finished. Where the passengers are unloaded, the floor of the platform is level for a dis-

tance varying in width from approximately four feet at the narrowest point to ten or twelve feet at the widest. The floor then begins to decline to the exits from the unloading platform, going either to street levels or other cars operating out of the terminal to the various parts of the city of Cincinnati; this decline being on a grade of approximately 10 per cent. The concrete surface of the unloading platform and ramp was float-finished in order to furnish a sure-footed walking surface for its patrons. The ramp, as a means whereby its patrons leaving the Covington cars could reach the lower levels of the outgoing cars to Cincinnati or the streets of that city rather than steps, was installed after consultation with, and upon the advice of, the most capable and skilled architects and engineers, as being by far the safer means of the two; and appellee does not complain that his injuries resulted from any structural defect or negligent plan or method of its construction.

The cars from Covington enter the terminal on a slightly curved track, and, after discharging their passengers, proceed around a sharper curve to another point, where they take on passengers for the return to Covington. It was or had been raining on the occasion when appellee entered the terminal building on one of appellant's cars. No car was ahead of it, and it proceeded to the point closest to the sharp turn before stopping to discharge its passengers, so that cars following might enter the terminal behind it. It seems that, in making the sharp turn, water from the gutter on the car falls upon the concrete platform. This happens because the portion of the car ahead of the front trucks proceeds in line until the wheels have reached the curve, when the car will swing. The water so falling on the unloading platform had followed a seam made in marking the concrete surface into squares, and had spread over the surface of the concrete on either side of the seam it had followed, leaving a wet area from near the point where appellee left the car in the general direction in which he was going, approximately three feet wide and ten or twelve feet long. Appellee fell while in this moist area. It is insisted for him that appellant's permitting this condition to exist was negligence, and that it was the proximate cause of his injuries. He testified that the moisture was sufficient after he fell to penetrate his clothing, causing him at first to believe that he was bleeding from the

wounds he had received. While appellee and two or three witnesses for him use the words "slimy" and "sloppy" and "slippery" as descriptive of the condition of the surface of the platform and ramp where it was wet, there is nothing in the evidence as a whole to justify the inference from the use of those words as descriptive of the condition that there was enough of foreign matter in the moisture on the concrete surface to attribute its presence to appellant's negligence. It was their way of describing the condition existing by reason of the presence of the water through which numbers of people had walked, which was necessarily discolored thereby. The evidence established that this floor had been swept and cleaned about two hours before the accident. The testimony of all the experts on concrete construction and finish, who testified herein, is that moisture or water on float-finished concrete has no tendency at all to make it slippery or unsafe for those walking over its surface, and there was none to the contrary.

Appellee, at the time he received his injuries, was 48 years of age, and weighed 290 pounds. The argument is made for appellant that, in view of his great weight and the fact that in the fall the bones of his leg were broken at three different places, we have conclusive proof that his injuries were occasioned by his ankle turning, causing him to fall on and break his leg. Appellee denied, however, that that occurred, and stated that his injuries were occasioned by a fall which resulted from his slipping on the wet concrete. The question would certainly be one for the jury, in case the existence of the water on the concrete may be held to be negligence upon the part of appellant.

Appellee testified that the rain started on this occasion after he boarded the street car in Covington and while on the way to Cincinnati. There is no testimony tending to establish how long the wet condition of the concrete had existed before appellee fell, and, in view of the short time elapsing after the rain began before appellee fell, the time must have been short; but, if it should be conceded that the water had been on the concrete for a sufficient length of time so that appellant, in the exercise of ordinary care, should have discovered it, we are confronted with the question whether, with knowledge of its existence, in the exercise of ordinary care it must be required to have anticipated that the condition of the plat-

form and ramp by reason of the presence of the water was unsafe or dangerous to its patrons. In view of the uncontradicted evidence of the witnesses on the subject and the common observation of all of us that a concrete surface, float-finished, does not have a tendency to become slippery or unsafe for those walking over it because of the presence of moisture or water on its surface, it is difficult to reach the conclusion that actual notice of the existence of water on the concrete surface of its terminal station would have been sufficient to arouse in appellant any cause for believing or anticipating that its patrons might be injured thereby so as to impose upon it the duty of providing a remedy for the condition.

This terminal had been in use something over four years, and thousands of people passed through it, over the place where appellee was injured, daily. If the water on the concrete came from the passing street cars on this occasion, necessarily that condition had existed many times previously. This appears to be the first instance in which any one has slipped and fallen on the unloading platform or the ramp leading to the various car tracks within the terminal since it has been in use, though several million patrons of appellant's utility have passed over them since it has been in use.

The parties seem to be agreed, as is true, that the law imposes upon appellant the duty to keep its terminal station and the places therein where its patrons are invited and have the right to be reasonably safe for their use. To succeed in this action it was incumbent upon appellee to establish by evidence that appellant had failed in this duty owing to him. In view of the evidence above discussed, this court is constrained to the view that no such evidence may be found in the record, and for this reason appellee failed to make a case authorizing the submission of the question to the jury. Appellant's motion for a peremptory instruction should have prevailed at the close of the testimony.

Judgment reversed, and cause remanded for other proceedings consistent herewith.